166 So.2d 728

**Ernest George BLAND**

**v.**

**STATE.**

**6 Div. 946.**

Court of Appeals of Alabama.

May 12, 1964.

Rehearing Denied June 9, 1964.

McCollough & McCollough, Birmingham, for appellant.

**394**

Richmond M. Flowers, Atty. Gen., and John C. Tyson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

The appellant prosecutes this appeal from a conviction for the offense of robbery in the Circuit Court of Jefferson County, Alabama. The appellant was sentenced to a term of twenty years in the penitentiary. A motion for a new trial was filed, heard, and overruled. The appellant gave notice of appeal and filed proceedings requesting that a pauper's transcript be furnished without cost. Said transcript was granted by the court.

The evidence at the trial disclosed that the appellant journeyed from Texas to Birmingham, Alabama, to join forces with one Floyd Leon Watson, a native of Birmingham, to commit a robbery against the person of Tom W. Woods, Manager of Hill's Super Market located at Woodlawn in the City of Birmingham. Testimony of the State's witnesses shows that the appellant arrived at the home of Watson's mother in Birmingham on the afternoon of November 22, 1960, and proceeded from said house to Hill's Super Market in Woodlawn. The record discloses that Watson stayed outside the store as a "lookout" while the appellant entered the store and approached Mr. Tom W. Woods, who was in the manager's office, or cage.

Mr. Woods testified that he was sitting in his office with his back to the door when someone asked him to "okeh" a check and that when he turned around the appellant was standing at the door with a gun in his hand and demanded the money in his possession, and that he put $2,550.00 in a paper sack and handed it to the appellant who then left the store.

Kenneth C. Courington and James William Leonard, who worked at the check-out counters, testified that they observed the robbery being committed and followed the appellant outside but met Watson, the alleged accomplice, who pulled a gun and told them to "get back in that damn store". They further testified that the last time they saw Watson and appellant they were running around the corner of the store.

One Roger Dale Jones, who lived and worked in Birmingham, testified that he was at the Watson home, 821 47th Street, North, during the afternoon of November 22, 1960, and that the appellant and Floyd Watson returned to the Watson home around 5:00 or 6:00 P.M. and that the appellant and a woman with him stayed about fifteen or twenty minutes and then left. When the witness Jones was asked if he knew the appellant's name, he answered, "All I knew was Trigger."

Mrs. Lillie Watson testified that Floyd Leon Watson, the alleged coconspirator, was her son and that she knew the appellant and that he was in her home during the afternoon of November 22, 1960.

Lt. M. L. Singleton, a detective of the Houston, Texas, Police Department, testified that he had a conversation with the appellant, Ernest George Bland, on November 30, 1960, and, after a proper predicate was laid, Lt. Singleton said that the appellant stated that "he had been involved in the robbery, he had pulled a robbery over here, but he did not want to come back to Alabama."

Detective A. M. Bailey, present Sheriff of Jefferson County, testified that he had a conversation with Floyd Leon Watson in the presence of the appellant in which Watson stated as follows:

"He stated that he had observed the location of this Hill's Grocery Company store, at 5501 (reporter's note: sic) First Avenue, North, and set up the operation of the robbery, and, in turn, called Bland in Houston and related these operations to him and asked him to come here and assist in the robbery."

Bailey further stated that Bland did not deny any of the statements made by Watson in his presence.

Floyd Leon Watson, the alleged coconspirator in the robbery, testified for the appellant and stated that he didn't know Bland and had never seen him until he saw him in the Jefferson County jail. He stated that he and one John Phillip Rogers, known as "Trigger Phil", committed the robbery of the Hill's Super Market on November 22, 1960, and that after dividing the money at his mother's house, Rogers and a girl with him left and that he didn't know where they went and had not seen them since.

The defense introduced interrogatories that had been propounded to two witnesses residing in Texas who were unable to attend the trial. One was propounded to one James J. Shown, a practicing attorney in Houston, Texas, and contained testimony to the effect that the appellant was in his employ and was in Houston, Texas, on November 22, 1960, figuring a repair job on his house. Mr. Shown stated that the reason for his vivid recollection was because it was two days before Thanksgiving.

The transcript of the proceedings in the trial of this cause affirmatively shows that no objections or exceptions to the closing argument of Mr. Hawkins, the prosecuting attorney, were reserved as a matter of record.

At the hearing of the motion for a new trial, which was prepared by the appellant Bland himself, the following transpired:

"The Court: 'C': The trial court erred in allowing the Solicitor to refer to defendant as a person who had previously been in trouble with the police.

"What does that have reference to?

"The Defendant: I believe Mr. Hawkins stated to the jury that the large cities kept a file on professional robbers and thieves, or some such like that, and in that statement he was inferring that I was picked out from that file.

"The Court: I recall the argument. I recall an objection. I did not, frankly, construe it to be what you construe it as, when taken into consideration with the entire argument that was made by Mr. Hawkins.

"Now, let's see. That was 'C'."

Bland's trial counsel, who was appointed to prosecute this appeal, argues that the failure of the court reporter to transcribe the closing argument of the solicitor and the objections and exceptions thereto in this, the capital case of an indigent defendant, constitutes reversible error.

Appellant's counsel strongly argues that the failure of the court reporter to transcribe every part of the proceedings had in the trial below and annex it to the free transcript furnished an indigent defendant, is a denial of due process under the Fourteenth Amendment of the Constitution of the United States. Counsel for appellant relies on the case of Stephens v. United States, 5 Cir., 289 F.2d 308, which held that the failure of the court reporter to record the examination of the veniremen and the arguments of counsel to the jury during a federal court trial constituted reversible error.

Judge Cameron, predicating his decision on several sections of U.S.C.A., used the following language:

"Since the failure of the court reporter to observe the terms of the statute is undisputed and the result is that a full transcript is not available to us,

we do not see how we can, under Rule 52(a), F.R.Cr.P., 18 U.S.C.A., adjudicate that there was no showing that any errors which might have been reflected by the transcript were harmless. This conclusion seems to be in line with whatever jurisprudence is available on the subject."

The above case refers solely to transcripts prepared by the federal court reporters and is based on the mandatory federal acts governing the preparation of the trial transcripts. The decision seems to have no application to transcripts of appeal prepared by the state trial courts.

The case of Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; was not cited or argued by appellant's counsel, but we think it is pertinent since the U. S. Supreme Court, by its holding, affirmed a strong line of decisions, cited therein that once a state chooses to establish appellate review in criminal cases, the equal protection clause of the Fourteenth Amendment requires that the state not foreclose indigents from access to any phase of that procedure because of their poverty.

Under Alabama criminal appellant procedure a transcript of the proceedings below is necessary for appellate review and an indigent defendant convicted in the Alabama trial courts is furnished a free transcript upon proper motion as the appellant here was. The requirements of an adequate transcript to insure a complete review of the appellate courts of this State was discussed by Judges Cates in Willis v. State, Court of Appeals of Alabama, April 30, 1963, 152 So.2d 883, as follows:

"It is clear from Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington State Bd. of Prison Terms & Paroles, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed. 1269; and Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899, that the Supreme Court of the United States has not required a state to furnish a poor man a full transcript of

ALL the evidence. All that is required for a main trial is some unbiased narrative or recital which gives the background ('stenographic support or its equivalent') to illumine the appellant's question or questions reserved for consideration on review for error.

"Under Griffin v. Illinois, supra, a state is not dispensing red beribboned souvenirs or mementos. Rather the convicted pauper is entitled to essential parts of the transcript (or a substitute) because of his need to show the appellate court the setting of the rulings below."

■ The practice of the court reporter to transcribe only objections and exceptions to arguments in criminal cases in Alabama is followed in the trials of the rich as well as the poor unless a special request is made at the beginning. The failure of the court reporter to record the objection to that part of the solicitor's argument made a ground of defendant's Motion for New Trial, will not warrant a reversal of this cause as the Motion for New Trial seems to present the alleged improper argument for review and consideration by this court as completely as had an objection by the appellant been recorded at the time of the argument.

■ Appellant contends that the solicitor in his closing argument made a statement that was so improper that the rights of the appellant were thereby prejudiced. The portion of the closing argument that the appellant contends to be prejudicial was not set out in the record as required under the rule in Alabama, but was assigned as error in the motion for new trial and recalled by the trial judge to have transpired. Ground "C" as set out supra, states that the solicitor argued that "large cities keep files on professional robbers and that the City of Houston, Texas, had such a file." Appellant contends that this statement was a comment on the commission of other offenses by the accused. We cannot agree with this contention. Without benefit of the entire argument, we must judge its import as set out

in the motion for a new trial. The trial judge, in overruling the motion for new trial, held the following:

"I recall the argument. I recall an objection. I did not, frankly, construe it to be what you construe it as, when taken into consideration with the entire argument that was made by Mr. Hawkins."

The prejudicial qualities of improper remarks of a solicitor must be gauged in each case separately, with much depending on the issues, the parties and the general atmosphere of the case. Anderson v. State, 209 Ala. 36, 95 So. 171; Mitchell v. State, 18 Ala.App. 471, 93 So. 46, cert. den., Ex parte Mitchell, 208 Ala. 699, 93 So. 923; Hawkins v. State, 29 Ala.App. 221, 195 So. 762, cert. den. 239 Ala. 532, 195 So. 765. We think that the trial judge had the better opportunity to judge the prejudicial effect of the above statement, in the context in which it was made, and agree that it could be made without creating an inference so prejudicial as to require a reversal.

■ Appellant contends that the trial court committed reversible error by not appointing counsel to represent him on his motion for new trial since he was an indigent defendant. The record discloses that on February 15, 1963, the defendant filed his own motion for new trial which included seven written and one oral ground. Each ground was carefully considered and discussed with the appellant by the trial judge. The motion for new trial was overruled and the defendant gave notice of appeal and filed a motion for a free transcript himself, which the trial judge granted. He later filed a motion to have counsel appointed to prosecute his appeal based on Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811, which motion was granted and the same experienced and able counsel who defended appellant at the trial was appointed to prosecute this appeal. There is no showing in the record that appellant requested or was denied counsel to assist in his motion for new trial.

Appellant's counsel does not argue nor contend in his brief that any error was committed at the trial below not now here subject to review, nor does he contend that the defendant was prejudiced, in any way by not being represented by counsel at the motion for new trial. Counsel for appellant contends that showing of prejudice is not necessary and bases this contention on Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114. The United States Supreme Court in the Hamilton case, supra, held that an indigent defendant was entitled to counsel at the time of arraignment, saying that it was such a crucial step in criminal procedure against a defendant in Alabama that a showing of prejudice to the indigent defendant was not necessary.

A convicted defendant in this State can prosecute an appeal to the appellate courts without filing a motion for new trial, and only those matters not made a part of the record proper are not subject to review. Without a showing that the defendant was prejudiced by some error which could only be reviewed by the filing of a motion for new trial, we find no merit in the contention that the Hamilton case, supra, is analogous to this one.

In Rogers v. United States, 325 F.2d 485, the Tenth Circuit Court of Appeals, speaking through Judge Lewis, said:

"Finally, appellant contends that he has been denied the right to counsel 'at that state of the proceedings which intervene between trial and appeal.'
* * *

"The right to counsel by an indigent accused of crime embraces the right to representation at all times and during all proceedings where the fundamentals of due process are involved. He has a right to be cautioned, advised, and served by counsel so that he will not be the victim of his poverty. But he has no right to continuous service, nor to counsel of his choice, nor to dictate the procedural course of his representation. Prejudice to an un-represented indigent will be presumed in certain instances, but not, as here, where an extraordinary and single procedural step is taken by the accused without benefit of counsel and where time does not compel the step during that period. We are satisfied that Rogers had no constitutional right to 'interim' counsel and was not prejudiced in any way. In fact, the history of this case and that of case of No. 7021 [Ferguson v. United States, 10 Cir., 307 F.2d 787] indicate that his constitutional rights have been, and are being, jealously protected, that he has drawn heavily upon them, and yet the verdicts of two juries indicate the absence of his compliance with concomitant obligations."

In view of the above, we find no reason, without a showing of prejudice to the rights of appellant, to hold that the appellant was entitled to counsel at his hearing on the motion for a new trial.

In Elkins v. State, 250 Ala. 672, 674, 35 So.2d 693, the Supreme Court of Alabama said:

"When a confession or inculpatory statement is made there is no meeting of minds. All that the accused voluntarily wrote or said which is material to the charge, is competent against him because it is his own admission and against his own interest. * * *"

■■ It was not error for the court to admit the alleged oral confession made to Lt. Singleton by the appellant. Oral confessory statements are primary evidence the same as written ones and with the proper predicate the witness may testify to said oral statements of the accused. Alexander v. State, 37 Ala.App. 533, 71 So.2d 520; Gordon v. State, 252 Ala. 492, 41 So.2d 610.

■ Counsel for appellant argues that the trial court committed reversible error by several comments allegedly made on the evidence and affecting its weight and suffi-

ciency. A careful review of the comments made by the trial judge as set out in appellant's brief and as disclosed by the record leads this court to believe that none of the comments were directed to the weight of the evidence or to its sufficiency but only to its admissibility and under what particular rule of law it was admitted or excluded. In fact, after an objection to the court's comment while making a ruling, the court instructed the jury as follows:

"Well, I will say this to you, gentlemen of the jury, any statement I made to you gentlemen is not for your consideration. I attempted to rule on a technical point of admissibility of evidence, and you are not to construe that as any opinion on my part as to what construction should be placed on any phase of the evidence, and I so instruct you at this time."

The Supreme Court, in the case of Phillips v. Beene, 16 Ala. 720, held:

" * * * it cannot be seriously contended that every expression of opinion by the court during the progress of the trial, if erroneous, shall furnish ground for reversal. Such opinion must in some way influence the result of the cause, or be supposed to do so by being given in charge to the jury, or by a refusal to charge, or by being connected with the exclusion or admission of the evidence."

Parker v. City of Birmingham, 36 Ala.App. 234, 56 So.2d 348; Nichols v. State, 267 Ala. 217, 100 So.2d 750.

We don't think that the remarks of the trial judge seriously affected the rights of the accused or the outcome of the cause in any way.

■ The witness Jones, on redirect examination, was questioned by the State as to a telephone conversation that the alleged co-conspirator Watson had made to Texas while in the presence of Jones. The appellant objected to the series of questions about the telephone conversation on the ground that they were irrelevant, incompetent, and immaterial. No part of the telephone conversation was elicited from the witness, and when it was determined that Watson had talked to some person other than the defendant, the trial judge promptly sustained an objection to the questions referring to the conversation. Even if the questions propounded to the witness Jones regarding the making of the telephone call were irrelevant and immaterial, we don't feel that the rights of the defendant were prejudiced to such an extent as to require a reversal. Gaston v. State, 117 Ala. 162, 23 So. 682; Terry v. State, 118 Ala. 79, 23 So. 776; Franklin v. State, 22 Ala.App. 124, 113 So. 321; Strickland v. State, 269 Ala. 573, 114 So.2d 407; Ala.Digest, Criminal Law, ⬠1169(1).

■ The questions asked the witness Jones regarding any statements made to him by the co-conspirator Watson the morning preceding the robbery were competent evidence against the appellant, even though not made in his presence. We think that the evidence prior to this was sufficient to prima facie establish that a conspiracy had been formed before the defendant reached Birmingham. This Court in Connelly v. State, 30 Ala.App. 91, 1 So.2d 606, held the following:

"The declarations of an alleged co-conspirator, made during progress of conspiracy and in furtherance of its object, are admissible as evidence against all the participants, there being introduced sufficient evidence to show prima facie a case of conspiracy or community of purpose."

See also Gandy v. State, 29 Ala.App. 485, 198 So. 265, cert. den. 240 Ala. 202, 198 So. 267; Cox v. State, 240 Ala. 368, 199 So. 806.

■ Finally appellant contends that the use of the words "Trigger Phil" by the solicitor constituted reversible error. The indictment contained the name Ernest George Bland, alias "Trigger Phil" and when the witness Jones was asked, "prior to

the time that you saw Bland in the home of Mrs. Watson, did you know his name?", he answered, "No sir. All I knew was 'Trigger'." The next question asking who referred to him as "Trigger" was sustained. The use by the solicitor of an alias or nickname in referring to the accused, if not excessive or in bad faith has been held not to amount to prejudicial error. The answer above shows that some evidence was introduced to prove that the defendant was known as "Trigger" or "Trigger Phil". See 23A C.J.S. Criminal Law, § 1106; Alabama Digest, Criminal Law, ☞724. Commonwealth v. Giambrone, 183 Pa.Super. 283, 130 A.2d 254.

Under the Act of September 16, 1963 (S.B. 351), we determine that counsel for the petitioner on this appeal is entitled to a fee of $150.00.

This cause is due to be and the same is hereby

Affirmed.